IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORENA CHAVEZ-ACOSTA,

     **Plaintiff,**

v.                                        **Case No. CIV 12-353 JP/CEG**

SOUTHWEST CHEESE COMPANY, L.L.C.,

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

On April 24, 2012, Defendant Southwest Cheese Company, L.L.C., filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asking the Court to dismiss Plaintiff Lorena Chavez-Acosta's claims for violation of the New Mexico Human Rights Act (NMHRA), Title VII of the Civil Rights Act of 1964 (Title VII), and 42 U.S.C. § 1981 (Section 1981).[1] On May 2, 2012, Plaintiff filed an Amended Complaint,[2] alleging additional facts in support of her original claims and asserting new claims for breach of contract, intentional infliction of emotional distress, and negligent supervision. On May 15, 2012, Defendant filed a Reply, arguing that Plaintiff's Amended Complaint did not cure the defects in Plaintiff's NMHRA, Title

---

[1] On April 24, 2012, Defendant filed a MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(6) AND SUPPORTING BRIEF (Doc. No. 3) (Motion to Dismiss). On May 1, 2012, Plaintiff filed PLAINTIFF LORENA CHAVEZ-ACOSTA'S RESPONSE MEMORANDUM TO "MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(6) AND SUPPORTING BRIEF" (Doc. No. 5) (Response). On May 15, 2012, Defendant filed DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(6) (Doc. No. 10) (Reply).

[2] On May 2, 2012, Plaintiff filed her FIRST AMENDED CIVIL COMPLAINT (Doc. No. 6) (Amended Complaint).

VII, and Section 1981 claims. Defendant has not asked the Court to dismiss Plaintiff's claims for breach of contract, intentional infliction of emotional distress, or negligent supervision.

Accordingly, the Court will consider Defendant's Motion to Dismiss as it applies to Plaintiff's NMHRA, Title VII, and Section 1981 claims in the Amended Complaint. The Court concludes that Plaintiff has stated plausible claims under the NMHRA and Title VII for sexual harassment resulting in a hostile work environment. However, Plaintiff has failed to state sufficient claims for (1) retaliation in violation of the NMHRA, (2) retaliation in violation of Title VII, or (3)  violation of Section 1981. Accordingly, Defendant's Motion to Dismiss will be granted in part and denied in part. The Court will not address Plaintiff's claims for breach of contract, intentional infliction of emotional distress, or negligent supervision in this Memorandum Opinion and Order.

## PROCEDURAL BACKGROUND

On March 14, 2012, Plaintiff filed her original Complaint[3] in the Ninth Judicial District Court, County of Roosevelt, State of New Mexico, alleging that Defendant engaged in unlawful gender discrimination and retaliation in violation of the NMHRA and Title VII. *See* Complaint ¶¶ 3, 6. Plaintiff also alleged that she "has been damaged under 42 U.S.C. § 1981." *Id.* § 7. Plaintiff asserted that she exhausted her administrative remedies by filing a Charge of Discrimination with the New Mexico Department of Workforce Solutions, Human Rights Bureau. *Id.* ¶¶ 3, 5.

Plaintiff attached as exhibits to her Complaint the Charge of Discrimination form she

---

[3] On March 14, 2012, Plaintiff filed a NOTICE OF APPEAL PURSUANT TO § 28-1-13 NMSA 1978 FROM "ORDER OF NON-DETERMINATION" ISSUED MARCH 7TH, 2012 BY THE NEW MEXICO HUMAN RIGHTS BUREAU (Doc. No. 1-1) (Complaint). Defendant has not filed an Answer.

submitted to the Human Rights Bureau, the AFFIDAVIT OF LORENA CHAVEZ-ACOSTA

(Affidavit) she filed with her Charge of Discrimination form, and an "Order of

Nondetermination" letter from the Human Rights Bureau dated March 7, 2012. *See* Doc. No. 1-

1, at 4-8.  Plaintiff's Charge of Discrimination form was received by the Human Rights Bureau

on July 11, 2012. *Id.* at 4. On that form Plaintiff marked the boxes for discrimination based on

retaliation and sex, and Plaintiff stated that she had suffered sex discrimination, retaliation, and

sexual harassment in violation of the NMHRA and Title VII. *Id.* Plaintiff's two-page Affidavit,

as filed with her original state court Complaint, lacks Plaintiff's signature and does not appear to

be notarized. *See id.* at 5-6.

On April 5, 2012, Defendant filed a NOTICE OF REMOVAL (Doc. No. 1). On April 24,

2012, Defendant filed its Motion to Dismiss (Doc. No. 3), asserting that Plaintiff's Complaint

should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted. Motion to Dismiss at 1. In Defendant's view, Plaintiff failed in the body of the

Complaint "to allege *any* facts supporting her claims." *Id*. at 3. And Defendant argues that

Plaintiff's Affidavit, which is incomplete and lacks any signature and oath, does not set forth

facts stating a plausible claim under the NMHRA, Title VII, or Section 1981. *Id.*

On May 2, 2012, Plaintiff filed her Amended Complaint, in which she asserts six

enumerated claims: (1) "DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF §28-1-7

NMSA 1978"; (2) "Sexual Harassment Under Title VII"; (3) "Breach of contract"; (4)

"INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS"; (5) "Negligent supervision";

and (6) "Violation of 42U.S.C. § 1981." Plaintiff also filed a complete copy of the Affidavit that

she submitted to the Human Rights Bureau with her Charge of Discrimination form. *See* Doc.

No. 7-1, at 5-7. The three-page Affidavit is notarized and includes Plaintiff's signature. *Id.*

In the Reply, Defendant argues that Plaintiff's Amended Complaint did not cure the defects in her NMHRA, Title VII, and Section 1981 claims. Reply at 1. Accordingly, Defendant reiterates its request that the Court dismiss Plaintiff's NMHRA, Title VII, and Section 1981 claims under Rule 12(b)(6). Reply at 4. Defendant does not request any relief with regard to Plaintiff's claims for breach of contract, intentional infliction of emotional distress, or negligent supervision. *See id.*

## DISCUSSION

**A.** **Standard under Rule 12(b)(6)**

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true, viewing the allegations in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When examining a complaint under Rule 12(b)(6), the Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Court considers whether a plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, dismissal of a complaint under Rule 12(b)(6) is proper where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

4

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).

**B.**   **Plaintiff's Factual Allegations in the Amended Complaint**

Plaintiff alleges the following facts in her Amended Complaint, which the Court accepts as true for purposes of ruling on Defendant's Rule 12(b)(6) Motion. Plaintiff is an Hispanic female. *Id.* ¶ 50. Plaintiff began working at Southwest Cheese Company, L.L.C., as a temporary worker in February 2009. Amended Complaint ¶ 9. Plaintiff became a full time non-probationary employee in May 2010. *Id.* ¶ 10. Plaintiff "was at all times qualified to perform her position" at Southwest cheese. *Id.* ¶ 53. Defendant employed Brenda Miller, Cody Stewart, and Chance Senkevick as supervisors with the authority to hire and fire employees and/or recommend their hiring and firing. *Id.* ¶ 25.

In the Amended Complaint, Plaintiff describes the following incident:

> In approximately, October 2010, Cody Stewart an assistant team leader pulled down his pants and exposed his genitals to Plaintiff while on the job at around 7 p.m. in the separator room behind the Clair-Fire 2 machine. Plaintiff was taking whey samples when Mr. Stewart appeared with his pants around his knees, exposing his erect penis which he held in his hand. He exposed himself to her again in the separator room Number 2. Mr. Stewart followed her to another room (Clair-Fire 5), and he exposed himself again. Plaintiff asked him why he was doing this and he said because he was having problems with his wife going out with other men and he was trying to get revenge. He told Plaintiff that if she reported him nobody would believe her. Another employee had reported Mr. Stewart's exposure but was fired. It was well known in the plant that Mr. Stewart was exposing himself to female employees. In fact, Plaintiff reported this behavior to Chance Senkevich [sic] who told her that if she reported it further, nobody would believe her. Mr. Stewart was moved but was not punished in any way by Defendant and Plaintiff was afraid of Cody Stewart throughout her employment on a daily basis.

5

*Id.* ¶ 12. Plaintiff claims that this incident created a hostile work environment for Plaintiff "because she did not know when or where Mr. Stewart would expose himself again." *Id.*

Plaintiff alleges that another male supervisor at Southwest Cheese, Chance Senkevick, also contributed to the sexual harassment and hostile work environment she experienced there. *See id.* ¶¶ 13-14, 25. On February 14, 2011, Senkevick presented Plaintiff with a box of chocolates and roses, which Plaintiff did not want, in Defendant's parking lot. *Id.* ¶ 13. Plaintiff told Senkevick that she was not interested in Senkevick and that she had a boyfriend. *Id.* Plaintiff reported this incident to human resources supervisor Brenda Miller "on at least four different occasions but nothing was done." *Id.* ¶¶ 13, 25. "Plaintiff requested a shift change but was told all she could do was apply for a different job." *Id.* ¶ 13. Immediately after Plaintiff complained to Miller, "a team leader removed a fan from the room where Plaintiff worked (which reaches 103 degrees plus Fahrenheit)." *Id.*

Senkevick proceeded "to make Plaintiff's life miserable on a daily basis up until she finally left employment with Defendant." *Id.* ¶ 14. Specifically, "on a continuous daily basis," Senkevick (1) "followed Plaintiff around work"; (2) stared at Plaintiff; (3) made rude gestures to Plaintiff; (4) made rude comments, which Plaintiff overheard, to other employees about Plaintiff's abilities and questioned why Defendant had hired Plaintiff; and (5) "deliberately took acts to sabotage Plaintiff's work area." *Id.* Plaintiff complained about Senkevick's behavior to human resources but was told she had to be mature and continue working with Senkevick. *Id.*

Plaintiff's last day of employment with Southwest Cheese was July 18, 2011. *Id.* ¶ 11. At that time, Plaintiff "was being paid hourly for a forty hour plus week. She received a 401 K plan, health and other retirement benefits." *Id.* ¶ 11.  Plaintiff explains that she left her employment with Southwest Cheese because of the sexual harassment she had suffered on a continuous basis.

6

*Id.* ¶¶ 27, 52. Plaintiff also alleges that she was "fired" and that "Defendant illegally retaliated against Plaintiff by terminating her [employment] because she rejected her supervisor's unwanted sexual advances." *Id.* ¶ 18, 53.

**C.      Application of Rule 12(b)(6) Standard to the Allegations in Plaintiff's Amended Complaint**

Defendant asks the Court to dismiss Plaintiff's NMHRA, Title VII, and Section 1981 claims under Rule 12(b)(6) for failure to state a claim. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 at 1192. Accordingly, in evaluating the sufficiency of Plaintiff's Amended Complaint, the Court will discuss the elements Plaintiff must prove to establish her claims.

**1.      Hostile Work Environment Sexual Harassment**

Plaintiff alleges that Defendant subjected Plaintiff to sexual harassment that created a hostile work environment in violation of the NMHRA and Title VII. *See* Amended Complaint, ¶¶ 16-17, 26. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This statutory provision prohibits an employer from subjecting an employee to a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). A female employee "may make out a claim of sex discrimination based on a hostile work environment if she can show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (quotation marks and citation

7

omitted).

Similarly, the New Mexico Supreme Court has explained that a defendant creates a hostile work environment in violation of the NMHRA when the defendant engages in offensive conduct that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." *Ulibarri v. State of N.M. Corr. Acad,*, 2006-NMSC-009, ¶ 12, 139 N.M. 193, 131 P.3d 43 (quotation marks and citation omitted).

Courts employ the same standard under Title VII and the NMHRA to determine whether harassment rendered a work environment hostile or abusive. The jury must consider the totality of the circumstances and evaluate the severity of the harassment from the perspective of a reasonable person. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007); *Ulibarri*, 2006-NMSC-009, ¶ 12. Factors a jury should consider include "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Renner*, 475 F.3d at 1187; *Ulibarri*, 2006-NMSC-009, ¶ 12.

In the Reply, Defendant explains that Plaintiff's allegation that Stewart exposed himself to Plaintiff was not included in Plaintiff's Charge of Discrimination and was not included in Plaintiff's original state court Complaint. Reply at 2-3. Defendant argues that, even if the allegations regarding Stewart are taken as true, the allegations do not constitute a plausible claim because Plaintiff failed to exhaust her administrative remedies regarding Stewart's conduct. *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).

Defendant also cites *Khalik*, 671 F.3d 1188, in support of its argument that Plaintiff failed to state a plausible claim for discrimination. Motion to Dismiss at 3. In *Khalik*, the

plaintiff brought claims for retaliation and discrimination based on race, religion, national origin, and ethnic heritage under Title VII and the Family Medical Leave Act (FMLA). 671 F.3d at 1189. The Tenth Circuit divided the plaintiff's allegations into two categories: (1) factual allegations, which are entitled to the assumption of truth under Rule 12(b)(6), and (2) conclusory allegations, which are not entitled to the assumption of truth. *Id.* at 1193. The plaintiff's conclusory allegations included her statements that "(1) she was targeted because of her race, religion, national origin and ethnic heritage; (2) she was subjected to a false investigation and false criticism; and (3) Defendant's stated reasons for the termination and other adverse employment actions were exaggerated and false, giving rise to a presumption of discrimination, retaliation, and wrongful termination." *Id.* The Tenth Circuit disregarded these conclusory allegations and was left with the following facts, which the Tenth Circuit accepted as true: "(1) Plaintiff is an Arab-American who was born in Kuwait; (2) Plaintiff's religion is Islam; (3) Plaintiff performed her job well; (4) Plaintiff was grabbed by the arm in the office; (5) Plaintiff complained internally about discrimination; (6) Plaintiff also complained internally about being denied FMLA leave; (7) Plaintiff complained about an email that described a criminal act; and (8) Defendant terminated Plaintiff's employment position." *Id.* at 1193-94.

The Tenth Circuit concluded that the plaintiff had failed to "sufficiently allege discrimination or retaliation." *Id.* at 1194. The plaintiff pleaded no facts related to the alleged discrimination, provided no information about when or to whom the plaintiff complained, and described no nexus between the person(s) to whom she complained and the person who fired her. *Id.* And the Court found there was "nothing other than sheer speculation to link the arm-grabbing and/or termination to a discriminatory or retaliatory motive." *Id.* Accordingly, the Tenth Circuit affirmed the district court's dismissal of the plaintiff's complaint under Rule 12(b)(6) for failure

to state a claim. *Id.*

In this case, the Court concludes that Plaintiff has pleaded sufficient facts to state plausible hostile work environment claims under the NMHRA and Title VII. First, the Court is not persuaded that the October 2010 incidents in which Stewart exposed himself to Plaintiff must be disregarded merely because Plaintiff did not describe Stewart's conduct in her Charge of Discrimination. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts" of discrimination. Hostile work environment sexual harassment "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Thus, the Supreme Court held "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, *so long as an act contributing to that hostile environment takes place within the statutory time period*." *Id.* at 105 (emphasis added); *see Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005) ("To determine whether . . . acts are part of the same hostile work environment, *Morgan* advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts."); *see e.g. Tademy v. Union Pac. Corp.,* 614 F.3d 1132, 1143 (10th Cir. 2008) (applying *Duncan* and *Morgan* to a plaintiff's harassment claims). Additionally, even in situations where administrative exhaustion is required, plaintiffs are not barred from using time-barred acts as background evidence in support of a timely claim. *Morgan*, 536 U.S. at 113. Following *Morgan*, the Tenth Circuit "has not decided whether hostile work environment claims must be independently exhausted or whether the prior exhaustion of reasonably related claims is sufficient." *Mayberry v. E.P.A.*, 366 Fed. App'x 907, 912-13 (10th Cir. 2010) (unpublished).

10

Accordingly, Plaintiff's failure to include allegations about Stewart's conduct in her Charge of Discrimination does not automatically bar the Court from considering Stewart's conduct when reviewing the sufficiency of Plaintiff's hostile work environment claims.

Moreover, even if the Court were to disregard Plaintiff's allegations regarding Stewart, Plaintiff's allegations regarding Senkevick are sufficient to state a plausible claim for hostile work environment sexual harassment. Plaintiff alleges that Senkevick made her life miserable on a daily basis by following Plaintiff at work, making audible rude comments about Plaintiff to other employees, staring at Plaintiff, making rude gestures, and sabotaging Plaintiff's work area. Amended Complaint ¶ 14. By describing these incidents, Plaintiff has provided far more factual detail than alleged by the plaintiff in *Khalik*. The Court concludes that Plaintiff has alleged enough facts to state a plausible claim for hostile work environment sexual harassment under the NMHRA and Title VII, and the Court will deny Defendant's Motion to Dismiss Plaintiff's sexual harassment claims.

### 2.    Retaliation

Plaintiff brings retaliation claims under the NMHRA and Title VII. In her NMHRA claim, Plaintiff alleges that Defendant retaliated against Plaintiff by terminating Plaintiff's employment because Plaintiff rejected her supervisor's unwanted sexual advances. *See* Amended Complaint ¶ 18. In her Title VII claim, Plaintiff asserts that "Defendant's intentional discrimination resulted in an adverse employment action against Plaintiff in that she left her employment on or about July 18, 2011 because of the sexual harassment she suffered on a continuous basis." *Id.* ¶ 27.

To succeed on a retaliation claim under Title VII or the NMHRA, Plaintiff "must make a prima facie showing that (1) she was engaged in protected opposition to discrimination; (2) she

11

was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Luster v. Vilsack*, 667 F.3d 1089, 1096 (10th Cir. 2011); *see Ulibarri*, 2006-NMSC-009, ¶ 16. "An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment." *Ulibarri*, 2006-NMSC-009, ¶ 16 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). A plaintiff can satisfy the "adverse employment action" element by proving either actual or constructive discharge. *See Pa. State Police v. Suders*, 542 U.S. 129, 137, 148-49 (2004).

Defendant concedes that Plaintiff complained to Miller about perceived harassment but argues that Plaintiff failed to allege that she suffered any materially adverse change in the terms of her employment, such as a change in her duties, pay, or benefits. Motion to Dismiss at 4; Reply at 3.

The Court disagrees and concludes that Plaintiff has alleged that she suffered a materially adverse change in the terms of her employment—the termination of her employment. *See* Amended Complaint ¶ 18 ("Defendant illegally retaliated against Plaintiff by terminating her because she rejected her supervisor's unwanted sexual advances."); ¶ 27 ("Defendant's intentional discrimination resulted in an adverse employment action against plaintiff in that she left her employment on or about July 18th, 2011 because of the sexual harassment she suffered on a continual basis."). But Plaintiff has not demonstrated that she exhausted her administrative remedies for this alleged adverse employment action. Plaintiff signed the Affidavit for her Charge of Discrimination on June 29, 2011, and the Human Rights Bureau received Plaintiff's Charge of Discrimination on July 11, 2012. Doc. No. 7-1, at 4-7. Plaintiff alleges that her employment with Defendant ended on July 18, 2011, a week after the Human Rights Bureau

12

received her Charge of Discrimination. Plaintiff has not shown that she filed an amended

complaint with the Human Rights Bureau after July 18, 2011, alleging that Defendant unlawfully

terminated of her employment. Under these circumstances, the Court concludes that Plaintiff has

failed to demonstrate that the termination of her employment constitutes an adverse employment

action for which she has exhausted her administrative remedies. *See Morgan*, 536 U.S. at 114

(explaining that each retaliatory adverse employment action constitutes a separate actionable

"unlawful employment practice" for which administrative remedies must be exhausted);

*Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003) (holding that conduct occurring

after the filing of an employee's Title VII complaint in federal court involving "discrete and

independent [retaliatory] actions" requires the filing of a new administrative charge of

discrimination).

   And although Plaintiff alleges that "a team leader removed a fan from the room where

Plaintiff worked (which reaches 103 degrees plus Fahrenheit)" immediately after she complained

to Brenda Miller about the incident involving chocolates and roses, the removal of a fan from

Plaintiff's work space does not constitute an adverse employment action under the NMHRA or

Title VII. *See Ellerth*, 524 U.S. at 761 ("A tangible employment action constitutes a significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits.");

*see also Ulibarri*, 2006-NMSC-009, ¶ 16 (same).

   The Court concludes that Plaintiff's retaliation claims under the NMHRA and Title VII

should be dismissed because Plaintiff has not shown that she exhausted her administrative

remedies. The Court will dismiss Plaintiff's retaliation claims without prejudice because

Plaintiff's failure to exhaust her administrative remedies deprives the Court of subject matter

jurisdiction over Plaintiff's retaliation claims. *See Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice."); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002) ("[T]he exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII.").

### 3.      Section 1981

In the Amended Complaint, Plaintiff alleges that "Defendant intentionally discriminated against Plaintiff on the basis of race in forcing her to terminate her [employment] contract and in the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship with Defendant." Amended Complaint ¶ 52. Defendant argues that, although Plaintiff states that she was discriminated against because she is Hispanic, Plaintiff failed to plead any facts to support this allegation. Reply at 3-4.

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). Generally speaking, the standard for proving employment discrimination under Section 1981 is the same as the standard for proving employment discrimination under Title VII. *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). But unlike Title VII, Section 1981 does not provide a remedy for discrimination on the basis of sex. *See Runyon*, 427 U.S. at 167.

The Court concludes that Plaintiff's claim for violation of Section 1981 should be dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiff has alleged no facts connecting her race to any of her factual allegations regarding employment discrimination or hostile work environment. Plaintiff's assertion that Defendant discriminated against her on the

basis of race is a legal conclusion, which the Court cannot accept as true when ruling on Defendant's Motion to Dismiss. *See Khalik*, 671 F.3d at 1191. Plaintiff has failed to state a plausible Section 1981 claim, and Defendant's Motion to Dismiss Plaintiff's Section 1981 claim will be granted. The Court will dismiss Plaintiff's Section 1981 without prejudice because the Court is uncertain as to whether Plaintiff could cure the defects in her Section 1981 claim by filing a second amended complaint. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir.2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leaving to amend would be futile.").

**IT IS ORDERED THAT** Defendant Southwest Cheese's MOTION TO DISMISS PURSUANT TO F.R.CIV.P. 12(b)(6) AND SUPPORTING BRIEF (Doc. No. 3) is granted in part and denied in part as follows:

(1)     Defendant's Motion to Dismiss Plaintiff's NMHRA and Title VII claims for sexual harassment resulting in a hostile work environment is DENIED;

(2)     Plaintiff's NMHRA and Title VII claims for retaliation are dismissed without prejudice for lack of subject matter jurisdiction;

(3)     Defendant's Motion to Dismiss Plaintiff's claim for violation of 42 U.S.C. § 1981 is GRANTED; and

(4)     Plaintiff's claim for violation of 42 U.S.C. § 1981 is dismissed without prejudice.

_____

UNITED STATES DISTRICT COURT JUDGE

15