UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LORENA CHAVEZ-ACOSTA,**
        **Plaintiff,**

**vs.**                                                    **12 CV 353 JAP/CG**

**SOUTHWEST CHEESE COMPANY, L.L.C.,**
        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

In DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION TO STRIKE

AFFIDAVITS (Doc. No. 41) (Motion), Defendant Southwest Cheese Company (SWC) asks the

Court to strike as inadmissible several statements made in affidavits supporting Plaintiff's

opposition to SWC's motion for summary judgment.[1]  The Court will grant the Motion in part

and will deny the Motion in part.

    I.  Background

    Plaintiff Lorena Chavez-Acosta (Plaintiff) brought this lawsuit alleging that while she

was employed at SWC, she suffered sexual harassment resulting in a hostile work environment

in violation to Title VII and the New Mexico Human Rights Act.  Plaintiff, a former employee at

the SWC plant in Clovis, New Mexico, alleges that her supervisor and trainer Chance Senkevich

(Senkevich) sexually harassed her after she rejected his romantic advances.  Plaintiff further

_____

[1] In ruling on the Motion, the Court has also considered: PLAINTIFF LORENA
CHAVEZ-ACOSTA'S RESPONSE TO "DEFENDANT SOUTHWEST CHEESE
COMPANY'S MOTION TO STRIKE AFFIDAVITS" (Doc. No. 45) (Response); and
DEFENDANT SOUTHWEST CHEESE COMPANY'S REPLY IN SUPPORT OF MOTION
TO STRIKE AFFIDAVITS (Doc. No. 49) (Reply).

alleges that an SWC team leader Cody Stewart (Stewart) exposed his genitals to her twice while both were working at the SWC plant.  Plaintiff has also brought claims under New Mexico law for breach of contract, intentional infliction of emotional distress, and negligent supervision. After SWC filed DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 35), Plaintiff submitted a responsive brief with affidavits attached.  SWC asserts that several statements of affidavit testimony should be stricken and not considered as evidence supporting Plaintiff's position because the statements are irrelevant, the statements are not based on personal knowledge of the affiant, the statements are inadmissible hearsay, or in the case of Plaintiff's affidavit, the statements contradict Plaintiff's deposition testimony.

II.  Standard of Review

Under Rule 56(c)(4),  "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Rules of Evidence also require that a witness' affidavit testimony be based on personal knowledge of the matter before such witness' testimony is admissible. Fed. R. Evid. 602.  An affidavit is inadmissible if "the witness could not have actually perceived or observed that which he testifies to." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (internal quotation omitted).

Under some circumstances, an affidavit or a declaration may be disregarded if the testimony contradicts a witness's prior sworn testimony: "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (stating that the utility of summary judgment as a

2

procedure for screening out sham fact issues would be greatly undermined if a party could create

an issue of fact merely by submitting an affidavit contradicting his own prior testimony).  To

determine whether a contradicting affidavit should be stricken because it is offered to create a

sham fact issue, the Court considers the factors outlined in *Franks v. Nimmo*: (1) "whether the

affiant was cross-examined during his earlier testimony"; (2) "whether the affiant had access to

the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on

newly discovered evidence"; and (3) "whether the earlier testimony reflects confusion which the

affidavit attempts to explain." *Id.*

In this motion, SWC asks the Court to strike portions of the Affidavit of Lorena Chavez-

Acosta (Resp. Ex. 1) (Plaintiff's Affidavit); (2) Affidavit of Yvonne Macias (Resp. Ex. 2)

(Macias Affidavit); and (3) Affidavit of Sarah Stewart (Resp. Ex. 3) (Stewart Affidavit).

A.  Plaintiff's Affidavit

SWC asserts that ¶ 5 of Plaintiffs' Affidavit contradicts Plaintiff's earlier deposition

testimony.  Plaintiff's Affidavit is dated April 9, 2013, and Plaintiff's video deposition was taken

on February 2, 2013.  Referring to the conduct of Stewart, Plaintiff testified in ¶ 5 of her

Affidavit that she "reported sexual harassment to Brenda Miller at the Human Resources, but she

did not take any action."  (Plaintiff's Aff. ¶ 5.)  In her deposition testimony, however, Plaintiff

stated that she did not report Stewart's conduct to anyone in SWC's management.  (SWC Mot.

Summ. J. Ex. C Plaintiff's Dep. at 62:25-63:3.)  Plaintiff appears to be attempting to create a fact

issue as to whether she reported Stewart's conduct to management at SWC, thus, the statement

in ¶ 5 of her affidavit will be stricken because it does not fit within any of the exceptions

outlined in the *Franks* case *supra*.  Consequently, the Court will not consider the affidavit

statement as evidence supporting Plaintiff's opposition to SWC's motion for summary judgment.

3

SWC also argues that the second sentence in ¶ 5 of Plaintiff's affidavit is hearsay: "One of the Team Leaders (Cody Stewart, a white male), who sexually harassed me told me he could get away with it because nobody would believe an ordinary worker over a Team Leader." (Plaintiff Aff. ¶ 5.)  Under Fed. R. Evid. 801(d)(2), a statement is not considered hearsay if the statement is offered against an opposing party that was made by the party in an individual or representative capacity or is a statement that the party adopted or believed to be true.  Thus, this statement will not be stricken as hearsay.

In ¶¶ 9-12 of Plaintiff's Affidavit, Plaintiff describes incidents in which Chance Senkevich (Senkevich), a supervisor/trainer who Plaintiff claims sexually harassed her, was not disciplined according to SWC policy.  SWC argues that these statements should be stricken because Plaintiff could not have had personal knowledge of these incidents especially the incidents that occurred prior to Plaintiff's employment at SWC.  In ¶ 9, Plaintiff testified, "Senkevich was late(5 points and over), in violation of SWC policies but was not fired as required by written policies.[SWC Bates stamped 000122]."  Plaintiff also testified that Senkevich "would come in to the plant in street clothes in violation of SWC policies. Nobody said anything. He never wore his safety glasses on the production floor in violation of SWC written policies. He would appear on the production line without a beard net in violation of SWC written policies."  (*Id.* ¶ 9.)  The Court concludes that Plaintiff could have based her testimony on personal knowledge since Plaintiff worked with Senkevich for several months.  Furthermore, Plaintiff could have known that Senkevich violated SWC's policies since she, as an employee at SWC, would be aware of SWC's rules and policies about work attire, safety glasses, and personal hair coverings required on the production floor.  The Court notes that this testimony is of limited relevance since Plaintiff has not alleged that she was treated less favorably than her

male counterparts at SWC.  Nevertheless, since this testimony seems to be minimally relevant to the claims asserted, the Court will not strike this testimony.

In ¶ 10, Plaintiff testified about an incident in which Senkevich exhibited a volatile temper when he "verbally abused" another employee.  SWC correctly argues that since this event would have happened more than a year prior to Plaintiff's employment with SWC, Plaintiff could not have had personal knowledge of the incident.  Thus, this statement will be stricken.  Plaintiff refers to a Bates stamped document as the source of this information.  The document speaks for itself; hence, Plaintiff's affidavit testimony is not only inadmissible, it is unnecessary.

In ¶ 11, Plaintiff testified that in 2009, "Senkevich refused to do his job and do only what he wanted to do." Plaintiff cited a Bates stamped document as the source of this information. Plaintiff further stated that Senkevich "would become furious when not promoted and would take things out by sabotaging product."  Again, this testimony is not based on personal knowledge but on the document submitted with the affidavit.  This statement will be stricken.

In ¶ 12, Plaintiff testified that on October 5, 2011, Senkevich was terminated for "threatening to sabotage production and use a tazer on upper management[.]" On October 5, 2011, Plaintiff was not an employee at SWC because she resigned her employment in July 2011. Thus, Plaintiff could not have had personal knowledge as to why Senkevich was terminated except through the document referred to as Bates stamped 00111.  This testimony will be stricken for purposes of ruling on SWC's motion for summary judgment.

In ¶ 14, Plaintiff recounts an incident with Senkevich: "On February 14, 2011, Chance Senkevich approached me in the parking lot of SWC and presented me with flowers and a box of chocolates for Valentines Day. I told him I was not interested at all. The subject of me having a

boy-friend was not discussed." SWC asks the Court to strike the last sentence of this statement as irrelevant and as contradictory to her deposition testimony that she told Senkevich that she was not interested in a relationship because she had a boy friend. (Plaintiff Dep. 143:22-144:4.) To the extent that the affidavit statement contradicts the deposition testimony, the Court will disregard it.

In ¶ 17, Plaintiff avers that "Brenda Miller's investigation was not thorough at all. She interviewed all whey side employees instead of cheese side employees. It was the cheese side employees who knew about the retaliatory harassment." Because Plaintiff could have had personal knowledge that Miller did not talk to "cheese side" employees, this testimony will not be stricken. However, to the extent the statement is offered to support a finding that the *Farragher/Ellerth* defense should not relieve SWC of liability for sexual harassment, Plaintiff's opinion that Miller's investigation was not thorough will be stricken as a legal conclusion.

In ¶ 19, Plaintiff testified "Chance Senkevich was made aware of my complaints making him retaliate by being even more aggressive." SWC argues that this statement could not have been based on personal knowledge because Plaintiff could not have known what Senkevich knew at the time. The Court agrees as to this argument, but the Court will not strike the statement that Senkevich because more aggressive after Plaintiff's complaint about his behavior. Plaintiff certainly knew how Senkevich treated her after she complained about his behavior, despite her lack of knowledge as to whether Senkevich was "made aware" of her complaint.

In ¶ 22, Plaintiff testified that Senkevich would leave the plant on occasion and bring in food to certain employees who "benefitted" from Senkevich's "food runs." Plaintiff testified that these "food runs" during work hours were prohibited under SWC's rules. SWC argues that Plaintiff could have had no personal knowledge whether it was against policy to go out of plant

and bring outside food in.  However, as an employee at SWC, Plaintiff would have had personal knowledge of SWC's work rules through SWC's Employee Handbook given to each employee. Thus, Plaintiff is qualified to testify as to "food runs" witnessed by her and as to whether these activities were in violation of SWC's work rules.  The Court will not strike this testimony.

In ¶ 23, Plaintiff testified that "Senkevich did not take whey samples every two hours as he was required, but instead left the log sheets blank or guessed. This was a violation of SWC policies. . . . he was too lazy to do so and many times he was off site for hours and return in street clothes. He worked the night shift so there were no office personnel or upper management there to observe his behavior and repeated violation of SWC policies."  SWC argues that Plaintiff could not have had knowledge of Senkevich's job responsibilities and his violation of SWC's work rules.  Although this testimony has little relevance to Plaintiff's claims of sexual harassment, the testimony could have been based on Plaintiff's observations because Plaintiff worked in the same area of the plant and was trained by Senkevich for a time.  The Court will not strike this testimony.

In ¶ 27, Plaintiff testified that Stewart "was friends with the Production Manager Eric Denton" and the implication was that Stewart would use this friendship to avoid any negative consequences after he exposed himself to Plaintiff.  SWC argues that Plaintiff could not have known whether this friendship existed. The Court notes that in her affidavit, Plaintiff did not indicate on what basis she knew about Stewart's friendship with Denton.  However, the Court will not strike this testimony because a friendship between two persons is something that could have been based on personal observation.  Plaintiff further testified:

> It was well known that Stewart had a habit of exposing his genitals to female employees. SWC was run like a male fraternity and I as a female employee was treated as expendable and second class to male employees throughout the term of my employment.

7

SWC argues that Plaintiff provides no basis for her knowledge of what was "well known" at SWC, but presumably, Plaintiff's knowledge was based on hearsay from other employees.  It is possible that Plaintiff had personal knowledge about Stewart's reputation at SWC; however, since Plaintiff provides no detail as to how she knew that "it was well known" at SWC, this statement should be stricken.  However, the Court will not strike Plaintiff's statement that SWC had a "fraternity-like atmosphere" because this statement could be based on Plaintiff's personal observations.  Plaintiff certainly can express her opinion on how she and other females were treated based on her own observations.

            **B.  Yvonne Macias' Affidavit**

In ¶ 3 of the Macias Affidavit, Ms. Macias testified that "[i]n approximately June 2009, Cody Stewart an assistant team leader . . . exposed his genitals to me while on the job."   SWC argues that this testimony is irrelevant to prove Plaintiff's sexual harassment claims because the issue is whether Stewart exposed himself to Plaintiff, not Macias.  However, this testimony has some relevance to Plaintiff's negligent supervision claim as to whether SWC knew about Stewart's propensity to expose himself at SWC.  Hence, the Court will not strike this statement for that reason.  In ¶ 3, Macias also testified that Stewart was "untouchable because he was part of the white male power structure at SWC and was protected." SWC argues that Macias failed to indicate how she had personal knowledge that Stewart was "untouchable" due to his position in the "white male power structure" at SWC. Although Macias could testify as to her observations that SWC was managed so as to favor white males, the Court does not see how Macias would have known that Stewart was "untouchable" as a result, especially in light of SWC's written policy that sexual harassment was intolerable at SWC.  Thus, the Court will strike this statement

and will disregard the statement as support for denying summary judgment.

          C.  Sarah Stewart's Affidavit

In her affidavit, Ms. Stewart, Stewart's now ex-wife, testified about a party she and Stewart attended which was for an SWC extern's last day at work for SWC.  Ms. Stewart testified that Stewart took a photograph of his genitals with the extern's camera and passed around the camera with this image to those sitting at the table with the Stewart's.  Ms. Stewart testified that Human Resources Manager Miller, Production Managers Eric Denton and Matt Healy, and Safety Director Debbi Abriego were present and viewed the image but "[n]obody from the Southwest Cheese management reprimanded Mr. Stewart."  Ms. Stewart further testified that "Mr. Denton and others made fun of the picture." Finally, Ms. Stewart testified that [n]obody else encouraged or told Mr. Stewart to take such a photograph and the conduct was definitely unwelcome."  This statement is somewhat relevant to Plaintiff's negligent supervision claim, but the testimony is not very weighty because there is evidence that this was not a work-sponsored event. SWC argues that Ms. Stewart was not an SWC employee and had no role in employee discipline thus she could not have known Stewart was not reprimanded.  However, at the time of the incident, Ms. Stewart was married to Stewart could have known Stewart was not disciplined.  SWC also asserts that Ms. Stewart could not have known that Stewart's conduct was "unwelcome" however, Ms. Stewart could have gauged the attitudes of those present based on their behavior.  Thus, the Court will not strike this testimony for purposes of ruling on SWC's motion for summary judgment.

          IT IS ORDERED that DEFENDANT SOUTHWEST CHEESE COMPANY'S MOTION

TO STRIKE AFFIDAVITS (Doc. No. 41) is granted in part and denied in part as stated herein.

_____
SENIOR UNITED STATES DISTRICT JUDGE