UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LORENA CHAVEZ-ACOSTA,
  Plaintiff,

vs.             12 CV 353 JAP/CG

SOUTHWEST CHEESE COMPANY, L.L.C.,
  Defendant.

MEMORANDUM OPINION AND ORDER

In the MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM PATTERSON,

III (Doc. No. 37) (Motion), Defendant Southwest Cheese Company, LLC (SWC) asks the Court

to exclude the opinion and testimony of Plaintiff Lorena Chavez-Acosta's expert on economic

damages William Patterson (Patterson).[1] After considering the arguments presented, the Court

will deny the Motion.

 I. Background

 Plaintiff Lorena Chavez-Acosta (Plaintiff) alleges that while she was employed at the

SWC's production plant in Clovis, New Mexico, she suffered sexual harassment resulting in a

hostile work environment.  Plaintiff asserts claims under Title VII, 42 U.S.C. § 2000e-2(a) and

under the New Mexico Human Rights Act NMSA § 28-1-7.  The Court has dismissed Plaintiff's

---

[1] In ruling on the Motion the Court has considered the arguments in PLAINTIFF
LORENA CHAVEZ-ACOSTA'S RESPONSE TO "DEFENDANT SOUTHWEST CHEESE
COMPANY'S MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM
PATTERSON, III (Doc. No. 38) (Response) and DEFENDANT'S REPLY TO MOTION TO
EXCLUDE TESTIMONY OF WILLIAM PATTERSON, III (Doc. No. 43) (Reply).

claims under New Mexico law for intentional infliction of emotional distress, breach of contract, and negligent supervision.  Plaintiff alleges that her supervisor and trainer Chance Senkevich (Senkevich) sexually harassed her causing a hostile work environment during her employment at SWC.  (Am. Compl. Doc. No. 6.)  Plaintiff seeks compensatory damages for lost wages, damages for emotional distress, and punitive damages.  Plaintiff does not seek reinstatement to her former position.

Plaintiff's expert, William Patterson (Patterson), is a forensic economist who submitted an economic analysis calculating the amount of lost wages and benefits Plaintiff should recover to compensate her for losses incurred as a result of her July 18, 2011 resignation from her employment at SWC.  SWC does not seem to question Patterson's qualification as an expert.[2] However, SWC argues that Patterson's conclusions are unreliable and inadmissible.  In Patterson's report (Mot. Ex. 1), Patterson opined that the value of Plaintiff's lost earnings to the end of 2013 would be $105,430.  Patterson states that the present value of Plaintiff's loss of future earning capacity would differ according to the date on which Plaintiff obtains future comparable employment.  For example, Patterson states that if Plaintiff obtains comparable employment after 2016, the present value of her lost earnings would be $128,681.

II.  Standard of Review

Rule of Evidence 702 governs the admissibility of an expert opinion as evidence:

---

[2]According to the resume attached to his report, Patterson received a BA in Economics at Carleton College and has done "other course work" at UNM and in Puebla, Mexico. He is a Member of the National Association of Forensic Economics and has published eight articles. Patterson owns or works with Legal Economics in Albuquerque. *See* SWC's Exhibit A (Doc. No. 37-1 at 9-10.)

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Plaintiff bears the burden of satisfying Rule 702 and establishing the admissibility of her expert's opinion. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). In applying Rule 702, a trial court acts as a "gatekeeper" to ensure proffered testimony is relevant and reliable. *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 589 (1993)).  Neither Plaintiff nor SWC requests a *Daubert* hearing, and the Court finds that a hearing is unnecessary. *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1238-39 (D. Kan. 2010) (noting that *Daubert* hearing is not mandated and whether to hold a hearing is within the trial court's discretion).

Trial courts have had the responsibility to ensure that proffered experts will assist the jury in understanding the evidence and in determining the factual issues the jury must decide. *Daubert*, 509 U.S. at 582. In sum, a trial judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597.

As noted in  *Moriarty v. Board of County Com'rs for County of Sandoval*, --- F.Supp.2d ----, 2013 WL 1143674, *15 (D. N.M. Mar. 20, 2013),

> while a district court may consider *Daubert's* factors when determining admissibility of expert testimony, "the test . . . is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."

*Id.* (citing *Kumho Tire*, 526 U.S. at 141–42).  In *Moriarty*, the Court recognized that expert evidence should be liberally admitted.  *Id.* (citing *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir.1995)).

III.  Discussion

SWC lists several reasons why it claims Patterson's opinions are unreliable.  SWC's arguments center around perceived fallacies in Patterson's written report and Patterson's proffered testimony based on that report.  SWC's Motion asks the Court to exclude both Patterson's opinion testimony and his report because of his unreasonable and unsubstantiated assumptions used to calculate Plaintiff's loss of earning capacity and failure to consider the facts of the case and basic principles used by economists. (Mot. at 5.)

SWC first argues that Patterson lacked important information from Plaintiff and from employees of SWC, and about unemployment rates in the New Mexico and Curry County, which are the relevant labor market areas.  SWC further contends that Patterson's report contains irrelevant charts, uses information from charts not attached to the reports, uses an analysis that does not apply to the case, and fails to identify the assumptions Patterson relied on in preparing the report.  More specifically, SWC disputes Patterson's conclusions in the area of alternative employment and lost earnings.  SWC notes that Patterson calculated Plaintiff's lost earnings by assuming Plaintiff would earn nothing from the present day to 2056, the year Plaintiff reaches retirement age.  SWC argues that this assumption is completely inaccurate since Plaintiff testified that she does not plan to stay unemployed until age 65. (Deposition of Lorena Chavez-

4

Acosta 113:12-25.)  SWC also notes the many areas in which its own expert, Dr. Allen

Montgomery Parkman, disagrees with Patterson, and argues that Patterson "unreasonably" failed

to review material that Dr. Parkman reviewed.  SWC summarily contends that "Patterson's

projections of Plaintiff's loss of earning capacity should be excluded." (*Id.* at 7.)

       SWC also challenges Patterson's conclusion that Plaintiff would have earned fringe

benefits valued at 15% of her earnings.  SWC points out that Patterson admitted he did not base

his calculation on the actual value of fringe benefits Plaintiff received while employed with

SWC. (Mot. at 8 citing Patterson Dep. 58:14-21.)  SWC maintains that Patterson failed to cite a

reference, study or other source of data to support this percentage as an appropriate basis to

value fringe benefits.  SWC concludes that Patterson must have made up the 15% figure, and

argues that this portion of Patterson's report and testimony should be excluded. (*Id.*)[3]

       Finally, SWC argues that Patterson's report should be excluded because its analysis

section lacks a list of assumptions or a description of the reasons behind the assumptions.

According to SWC, the report contains a series of charts with no specific description of how

those charts support Patterson's analysis. SWC contends that because SWC cannot make sense

of Dr. Patterson's information, the report "frustrates the entire purpose behind Rule 26," and

should be excluded. (Mot. at 8-9.)

       Plaintiff disagrees with SWC's contention that Patterson assumed Plaintiff would never

work again. (Resp. at 8 Patterson Dep. Ex. 1 at 37-38.)  However, Plaintiff then attacks SWC's

---

[3] In his deposition, Patterson explained why he uses the 15% figure to calculate the value of fringe benefits, but Patterson admits he did not reference a specific source for the percentage. (*See* Resp. Ex. 1, Patterson Dep. 54:18-57:11.) Patterson testified that the Monthly Labor Review's Employment Cost Index reports that the value employers place on fringe benefits as a cost is overstated and can equal from 20% to 50% of earnings. (*Id.* 55:3-11.) Patterson stated that he uses the 15% figure "because it's the most conservative." (*Id.* 55:23-24.)

proffered expert opinion that Plaintiff should have been able to obtain comparable employment within 13.6 weeks of her resignation. (Resp. at 9-10.)  Plaintiff counters SWC's attack on Patterson's fringe benefit calculation by pointing out that SWC's expert witness "used the exact same 15 percent figure." (*Id.* at 11-12.)  Plaintiff responds that Patterson had Plaintiff's check stubs, which helped him calculate that figure, and that Patterson explained his calculation in his deposition. (*Id.* at 12.)  Finally, Plaintiff contends that Patterson's written report complies with the requirement in Rule 26 that an expert report "contain a complete statement of all opinions that the witness will express and the basis and reasons for them." Fed. R. Civ. 26(a)(2).  Plaintiff lists each section of the report and its charts and what they represent to explain how they provide the basis for Patterson's proposed testimony.

IV.  Conclusion

SWC seems to concede that Patterson is "qualified as an expert by knowledge, skill, experience, training, or education."  Based on the Court's review of Patterson's credentials, the Court agrees that Patterson is qualified as an expert under the first step of the two-part test in Fed. R. Evid. 702.  SWC has failed to convince the Court that Patterson's report is based solely on speculation.  The Court believes that SWC's observations point out weaknesses in Patterson's report that can be brought out on cross examination or countered with rebuttal testimony. Hence, the Court will deny the Motion.

IT IS ORDERED that SWC's MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM PATTERSON, III (Doc. No. 37) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE