UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LORENA CHAVEZ-ACOSTA,**
        **Plaintiff,**


**vs.**                                                    **12 CV 353 JAP/CG**


**SOUTHWEST CHEESE COMPANY, L.L.C.,**
        **Defendant.**


**MEMORANDUM OPINION AND ORDER**


In Plaintiff's MOTION TO EXCLUDE EXPERT TESTIMONY OF ALLEN

MONTGOMERY PARKMAN (Doc. No. 39) (Motion), Plaintiff Lorena Chavez-Acosta

(Plaintiff) asks the Court to exclude the expert opinion and testimony of Dr. Allen Montgomery

Parkman (Parkman).  Parkman was retained  by Defendant Southwest Cheese Company, LLC

(SWC) as an economic expert to testify about Plaintiff's lost earnings incurred from her

resignation of her employment at SWC.[1]  After considering the arguments presented, the Court

will deny the Motion.

    I.  Background

    Plaintiff alleges that while she was employed at the SWC's production plant in Clovis,

New Mexico, she endured sexual harassment resulting in a hostile work environment.  Plaintiff

---

[1] In ruling on this Motion, the Court has also considered DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ALLEN MONTGOMERY PARKMAN (Doc. No. 46) (Response) and PLAINTIFF LORENA CHAVEZ-ACOSTA'S REPLY TO "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ALLEN MONTGOMERY PARKMAN" (Doc. No. 47).

asserts claims under Title VII, 42 U.S.C. § 2000e-2(a) and under the New Mexico Human Rights

Act NMSA § 28-1-7.  The Court has dismissed Plaintiff's claims for intentional infliction of

emotional distress, breach of contract, and negligent supervision.  Plaintiff alleges that her

supervisor and trainer Chance Senkevich (Senkevich) and a team leader, Cody Stewart (Stewart),

sexually harassed her and created a hostile work environment during her employment at SWC.

(Am. Compl. Doc. No. 6.)  Plaintiff seeks compensatory damages for lost wages, damages for

emotional distress, and punitive damages.  Plaintiff does not seek reinstatement to her former

position. (*Id.*)

SWC submitted Parkman's opinion to counter the opinion of Plaintiff's economic expert,

William Patterson as to the amount of lost wages and benefits Plaintiff should recover to

compensate her for sexual harassment resulting in a hostile work environment.  Plaintiff

challenges Parkman's qualification to testify since he "is a forensic economist not a vocational

evaluator." (Mot. at 4.)  SWC points out that Parkman has testified about the same matters in

many other cases, over many years, and has all the requisite qualifications. Parkman is a

damages expert and is testifying as such, and SWC points out that damages experts typically use

the same types of data used by Patterson.  Neither party specifically requests a *Daubert* hearing,

and based on Parkman's Curriculum Vitae and SWC's explanations, the Court finds that a

*Daubert* hearing is not necessary and that Parkman is qualified to testify. *Belisle v. BNSF Ry.*

*Co.*, 697 F. Supp. 2d 1233, 1238-39 (D. Kan. 2010) (noting that *Daubert* hearing is not mandated

and whether to hold a hearing is within the trial court's discretion).

II.  Standard of Review

Rule of Evidence 702 governs that admissibility of expert opinion as evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  SWC bears the burden of satisfying Rule 702 and establishing the admissibility of its expert's opinion. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). In applying Rule 702, a trial court acts as a "gatekeeper" to ensure proffered testimony is relevant and reliable. *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 589 (1993)).  A trial court has the responsibility to ensure that proffered experts will assist the jury in understanding the evidence and in determining the factual issues the jury must decide. *Daubert*, 509 U.S. at 582. In sum, a trial judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597.

As noted in  *Moriarty v. Board of County Comm'rs for County of Sandoval*, --- F.Supp.2d ----, 2013 WL 1143674, *15 (D. N.M. Mar. 20, 2013) (Parker, J.),

> while a district court may consider *Daubert's* factors when determining admissibility of expert testimony, "the test . . . is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."

*Id.* (citing *Kumho Tire*, 526 U.S. at 141–42).  In *Moriarty*, the Court recognized that expert evidence should be liberally admitted. *Id.* (citing *United States v. Gomez*, 67 F.3d 1515, 1526

3

(10th Cir.1995)).

    III.  Discussion

    Plaintiff argues that Parkman's report relies on several incorrect assumptions. (Mot. at 2,

Ex. 1.).  Plaintiff then attacks three specific aspects of Parkman's report.  Plaintiff first addresses

Parkman's claim that "displaced workers can take three to five years after a separation to fully

recover to their prior earnings level." (*Id.* at 4.)  Plaintiff argues that the two articles cited in

support of this claim are twenty and fourteen years old respectively, and the reports are based on

data about workers and regions that are not comparable to Plaintiff and New Mexico. (*Id.* 4-5.)

Next, Plaintiff disputes Parkman's conclusion that Plaintiff voluntarily returned to school, so she

can have no actual loss of earnings. (*Id.* at 6.)  Plaintiff contends that this statement is false and

that she "has desperately looked for employment since her termination . . . [and] would accept a

job even if she were going to college full time." (*Id.*)  Plaintiff maintains that that Parkman did

not read her deposition or contact her attorney for information, so his conclusions regarding

Plaintiff are not reliable. (*Id.* at 6-7.)  Plaintiff then attacks Parkman's conclusions about whether

Plaintiff should have been able to find work in Curry County by the beginning of 2012, saying

that Parkman's statement that Curry has one of the country's lowest unemployment rates is

simply wrong. (*Id.* at 7.)  Plaintiff further maintains that since she has been unsuccessful in her

search for employment, Parkman's conclusions must be incorrect. (*Id.*)

    In his report, Parkman cites as a source for his Curry County statistics the website of

Department of Workforce Solutions, a division of the New Mexico Department of Labor. (Mot.

Ex. 1 at 2 n. 5.)  Parkman's report states that "[g]iven the relatively short duration of

unemployment for young women in the United States and the low unemployment rate in Curry

County, I have assumed that Chavez-Acosta had the ability to obtain an entry level position

4

similar to her initial position at Southwest [Cheese Company] by the beginning of 2012." (Mot. Ex. 1 at 3.) Parkman opines that by 2014 Plaintiff should have achieved through other employment the same level of wages that she would have been earning at SWC. Parkman determined that as of the end of 2012, Plaintiff's total loss of back wages and front wages equals $29,585, which consists of $27,045 in back wages and $2,540 in front wages.

Plaintiff claims that Parkman's statement that Curry County has one of the lowest unemployment rates in the United States is incorrect because at least six counties in New Mexico have lower unemployment rates in November 2011. Plaintiff also takes issue with Parkman's use of statistics from Curry County and from the city of Clovis because the SWC plant "is on the County boundary line between Roosevelt and Curry County, not within the municipality of Clovis." (*Id.*) These errors, Plaintiff claims, show that Parkman's "opinion is not based on real facts," and is therefore inadmissible. (*Id.*) Plaintiff further argues that the report violates the disclosure requirements of Fed. R. Civ. P. 26 because it "fails to set forth 'a statement of the compensation to be paid for the study and testimony in the case' " as required by Fed. R. Civ. P. Rule 26 (b)(2)(B)(vi). (*Id.* at 8.) SWC claims to have sent this information to Plaintiff with the original report. (Resp. at 9.) This minor omission can be corrected and does not support the entire exclusion of Parkman's report and opinion.

SWC responds that each of Plaintiff's challenges to Parkman's proposed testimony are "misguided" because Parkman used proper data and methodology. SWC contends that Plaintiff may illustrate her contention that Parkman's opinion is based on incorrect data and assumptions by using cross examination or rebuttal evidence. (Resp. at 5-8.) SWC argues generally that Plaintiff misstates Parkman's analysis and evidence, and that Parkman cited "data commonly used by economists and facts from the case to support" his assumptions. (*Id.* at 4.) In response

5

to Plaintiff's extensive argument that Parkman mistakenly concluded Plaintiff has voluntarily returned to school and has not looked for work, SWC points to Plaintiff's interrogatory response in which Plaintiff stated that she was going to school and had not applied for employment anywhere.  (*Id.* at 5 , Ex. B.)  SWC contends that Plaintiff's claim that for the last 22 months she has "desperately" sought work is new, and that notwithstanding Plaintiff's interrogatory response, Parkman "also prepared an analysis of Plaintiff's earnings loss if Plaintiff were actually seeking employment." (*Id.* at 5.)  SWC similarly dismisses Plaintiff's argument about Parkman's use of Curry County data, because even though SWC's plant is located near the county line, it is actually located inside Curry County. (*Id.* at 7.)  As for the time frame of unemployment data that Parkman used, which Plaintiff challenges, SWC points out that Plaintiff left work with SWC in July 2011, so November 2011 data is permissible based on Parkman's assumption that Plaintiff should have been able to find work within 13 weeks of her resignation. (*Id.* at 8.)

IV.  Conclusion

Plaintiff has not persuaded the Court that Parkman is unqualified as an expert by knowledge, skill, experience, training, or education.  Based on the Court's review of Parkman's credentials, the Court concludes that Parkman is qualified as an expert under the first step of the two-part test in Fed. R. Evid. 702.  Second, the Court finds that Plaintiff has failed to show that Parkman's report should be excluded because it is based on incorrect data or speculative assumptions.  The Court believes that Plaintiff can identify any weaknesses or incorrect assumptions on cross examination or with rebuttal testimony.  Hence, the Court will deny the Motion.

IT IS ORDERED that the MOTION TO EXCLUDE EXPERT TESTIMONY OF

ALLEN MONTGOMERY PARKMAN (Doc. No. 39) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE