UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

LORENA CHAVEZ-ACOSTA,

      **Plaintiff,**

vs.                                       **Case No. 12 CV 353 JAP/CG**

SOUTHWEST CHEESE COMPANY, LLC,

      **Defendant.**

MEMORANDUM OPINION AND ORDER

In DEFENDANT'S MOTION FOR RECONSIDERATION (Doc. No. 60) (Motion),

Defendant Southwest Cheese Company, LLC (SWC) asks the Court to reconsider its denial of

SWCs motion for summary judgment on Plaintiff's claims of hostile work environment sexual

harassment under Title VII and the NMHRA.  Plaintiff opposes the Motion. (*See* PLAINTIFF'S

RESPONSE TO "DEFENDANT'S MOTION FOR RECONSIDERATION" (Doc. No. 67)

(Response)).

In its MEMORANDUM OPINION AND ORDER (Doc. No. 56) (Order), the Court

granted partial summary judgment and dismissed Plaintiff's claim for sexual harassment based

on the conduct of SWC employee, Cody Stewart (Stewart). The Court found that SWC cannot be

held vicariously liable for Stewart's conduct because SWC had a clear policy prohibiting sexual

harassment and Plaintiff failed to report Stewart's conduct under that policy.  The Court also

found that SWC cannot be held liable for negligence based on Stewart's conduct because

1

Plaintiff failed to come forward with evidence that SWC knew or should have known about Stewart's behavior of exposing himself to Plaintiff. However, the Court denied summary judgment as to Plaintiff's claims under Title VII and the NMHRA alleging that SWA is liable for the hostile work environment sexual harassment based on the conduct of Chance Senkevich (Senkevich), Plaintiff's supervisor and trainer.[1]  The Court found that Plaintiff presented sufficient evidence to raise a material fact issue as to whether Senkevich repeatedly harassed Plaintiff after she refused Senkevich's romantic overture.

### 1.  Standard of Review

The rules of civil procedure allow a party to object to an order or decision through either a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment under Fed. R. Civ. P. 60(b). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991). If a party files a motion for reconsideration of a decision within twenty-eight days of the decision, the Court will treat it as a motion to alter or amend a judgment under Rule 59. *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009). The Motion was filed within twenty-eight days after the Order was entered; thus, the Court will consider the Motion under the standards of Rule 59.  Under Rule 59, the Court may grant a motion for reconsideration if the movant shows that "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

---

[1] Since the standards are the same for sexual harassment under Title VII and the NMHRA, the Court will treat Plaintiff's claims under those statutes as one claim.

2.  Factual Background

SWC operates a cheese and whey production plant in Clovis, New Mexico.  On August 12, 2010, Plaintiff began working at the Clovis plant as an hourly cheese production employee. (Doc. No. 36, Ex. 1 Chavez-Acosta Aff. ¶ 2.)[2]  A few months later, Plaintiff was moved to the whey production area of the plant. (*Id.* ¶ 3.)  On July 18, 2011, Plaintiff resigned her employment. (Doc. No. 35, Ex. B Miller Aff. ¶ 13.)

On February 14, 2011, several months prior to her resignation, in the SWC parking lot, Senkevich offered Plaintiff roses and a box of chocolates and asked her for a date. (Chavez-Acosta Aff. ¶ 14.)  Plaintiff told Senkevich that she was not interested in a romantic relationship. (*Id.*)  Plaintiff contends that after this refusal, Senkevich, who was assigned to train Plaintiff in her new job, picked on her "constantly," stalked her around the plant, and used a cell phone to photograph her, which was a violation of SWC's work rules. (*Id.* ¶ 15 i-xi.) Plaintiff presented evidence that "on several occasions" Senkevich sabotaged her work: (1) he switched blue sticker labels on the "fine" boxes, which Plaintiff had to correct; (2) he took off a screen on the fine saver, which caused the fines to fall down and clog clarifiers and separators requiring Plaintiff to hand-clean the clarifiers; (3) he showed Plaintiff an illegal shortcut when flushing out the pasteurizer, which actually caused sealers to blow off resulting in "down time;" and (4) he hid gaskets needed for the machines in Plaintiff's area. (*Id.*)  Senkevich would not address Plaintiff by name, but would rudely address her by saying "hey" or "hey you." (*Id.*)   Plaintiff testified by affidavit that Senkevich "convinced other employees to sabotage her work area," and Plaintiff

---

[2]  In its Order, the Court incorrectly stated that Plaintiff began working for SWC in February 2009 based on the allegations in the Amended Complaint (Doc. No. 6); however, according to SWC's employment records, Plaintiff actually began working for SWC in August 2010.  The Pre-Trial Order submitted to the Court by the parties contains these conflicting dates, and the Court will correct all references to the February 2009 date in the Pre-Trial Order and in all future filings.  The Court requests that the parties make the same corrections in future filings.

testified that her "job was made more difficult." (*Id.*)  Plaintiff further stated that her "log sheets were removed from the separator room so [she] would get in trouble." (*Id.*)

In the Order, the Court found that Plaintiff had presented evidence that Senkevich's behavior was motivated by Plaintiff's gender because the behavior started soon after Plaintiff's rejection of his romantic offer on February 14, 2010.  The Court further found that Plaintiff came forward with sufficient evidence for a reasonable jury to find that Plaintiff's work environment was hostile although the Court admitted that this was a "close case."  Notably, however, the sexual harassment section of SWC's employee handbook contains several examples of inappropriate sexual harassment one of which is "adverse treatment of an employee for refusing to accept an invitation to enter into a personal or sexual relationship." (Mot. Ex. A-4 at 5.)  Thus, SWC recognizes that sexual harassment can occur under similar conditions.

SWC contends that Plaintiff's allegations, even if true, do not, as a matter of law, reach the legal threshold for a hostile work environment.  SWC argues that Senkevich's conduct was not severe or pervasive enough to meet the objective test that a reasonable person would find Senkevich's conduct either severely abusive or pervasive enough to alter a condition of Plaintiff's employment.  *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (stating that a plaintiff must prove that the work environment was objectively and subjectively hostile or abusive). SWC correctly asserts that two of the cases cited by the Court involved much more egregious behavior or involved inappropriate physical contact, which is not presented here. SWC focuses on two cases cited by the Court, *Ocana v. American  Furniture Company,* 2004-NMSC-018, 135 N.M. 539, 91 P.3d 58, and *Robson v. Eva's Super Market, Inc.*, 538 F. Supp. 857, 861 (N.D. Ohio 1982).

4

In *Ocana*, the New Mexico Supreme Court reversed a summary judgment in favor of the employer concluding that the trial court incorrectly considered the credibility of the plaintiff's testimony.  The plaintiff presented evidence that her harasser acted abusively:

> . . . he would always follow her around, including to the restroom, . . . He would approach her when she was alone, stare at  her, and touch himself in a sexually suggestive manner. . . stare at her breasts. He usually had an erection when she saw him and he rubbed up against her with an erection on one occasion. . . .

*Id.*  The harassment in *Ocana* involved more overtly sexual conduct and inappropriate physical assault.

In *Robson*, the district court denied defendant's motion for summary judgment based on evidence that the plaintiff's supervisor offered her money to have sex with him, asked her to wear tight jeans to work, directed her to work near him so he could watch her, made profane and sexually suggestive comments to her, leered at her, felt the back of her blouse on one occasion to see if she was wearing a bra, and patted plaintiff on the buttocks on another occasion. *Robson*, 538 F. Supp. at 859.  On one day near the end of plaintiff's lunch break when both plaintiff's and her harasser's supervisor was not at work, the harasser, named Mayfield,

> . . . grabbed her arm roughly and told her to get back to work. Plaintiff responded that she had 15 minutes remaining on her break, and that Mayfield was hurting her arm and was frightening her. Mayfield responded by squeezing her arm more tightly and referring to her in a sexually profane manner and saying, "I want you to be afraid of me." Mayfield then pushed her arm away roughly. In the process, she says, plaintiff suffered severe physical pain, was frightened, and her arm was bruised.

*Id.* at 859-60.  SWC correctly argues that the violent and abusive physical conduct in *Robson* is simply not alleged or shown in this case.

SWC maintains that these cases are incompatible to this case because they involved either severe physical contact or sexually suggestive behavior or language.  However, the Court

also cited case law involving behavior that was not overtly sexual but was considered sufficient for a hostile work environment claim because the behavior was motivated by the plaintiff's gender.  That is the situation presented in this case.  However, even though courts routinely compare the facts of different cases to each other to evaluate the relative severity or pervasiveness of alleged conduct, Tenth Circuit precedents require courts to examine the specific context in which the conduct occurred on a case-by-case basis. *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1097 n. 2 (10th Cir. 1999).  In this case, Plaintiff presented evidence that after Plaintiff rebuffed Senkevich's romantic overture, Senkevich, treated Plaintiff in an abusive manner, and committed acts that undermined Plaintiff's ability to do her job.  This evidence supports denying summary judgment on Plaintiff's hostile work environment sexual harassment claim. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987) (citation omitted) (holding that any harassment or other unequal treatment of an employee that would not occur but for the sex of the employee may, if sufficiently patterned or pervasive, comprise an illegal hostile work environment actionable under Title VII). According to the Tenth Circuit, "[e]vidence of a general work atmosphere . . . -as well as evidence of specific hostility directed toward the plaintiff-is an important factor in evaluating the claim." *Id.* at 1415.  Nevertheless, the Court will further explain its ruling.

*O'Shea*, a case cited by the Court in its Order, illustrates the concept that behavior motivated by gender animus can create a hostile work environment under Title VII, even if the conduct is not overtly sexual.  In *O'Shea*, the Tenth Circuit reversed a district court's grant of summary judgment in favor of the defendant concluding that the plaintiff established genuine issues of material fact regarding whether the alleged conduct was "'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working

6

environment.'" *Id.* at 1102.  The plaintiff presented evidence that the harasser, named Mr. Jones, made frequent derogatory comments about women, told people that Plaintiff was incompetent, and refused to cooperate and share work information with Plaintiff.  *Id.* There was evidence that Mr. Jones told his coworkers that Plaintiff was going to file a sexual harassment complaint against him. *Id.*  The court noted that although Mr. Jones began with "obviously sex and gender-motivated conduct," this conduct,  "so poisoned the entire body of conduct toward [p]laintiff that a jury reasonably could view *all* of the allegedly harassing conduct occurring after Mr. Jones began working for Defendant as the product of sex and gender hostility." *Id.*  There was evidence that Mr. Jones failed to invite the plaintiff to lunch but often invited the plaintiff's male coworkers to lunch. *Id.* at 1100.  Mr. Jones also failed to inform the plaintiff of needed computer passwords, he refused to explain important work projects to her; and he excluded the plaintiff from a programming class. *Id.*  As illustrated by *O'Shea,* even if some of the offensive conduct is not explicitly sexual in nature, a jury can infer that the conduct was related to gender or arose out of a gender-related context.  The court specifically noted that this inference should be made by the fact finder. *Id.* at 1097.  In *O'Shea* as in this case, gender-related conduct and non-gender related conduct supported a fact issue that the entire work environment was sexually abusive.  In this case, gender-related conduct, Senkevich's February 14, 2011 request for a dating relationship, explains Senkevich's later abusive conduct following Plaintiff's refusal.  In *O'Shea*, harassment was characterized by Mr. Jones' conduct undermining the plaintiff's ability to perform her job.  Senkevich similarly undermined Plaintiff's job performance after her refusal.

In contrast, the Tenth Circuit in *Riske v. King Soopers*, 366 F.3d 1085, 1092 (10th Cir. 2004), concluded that the plaintiff failed to present sufficient evidence to support a hostile work environment sexual harassment claim. The evidence showed that over a period of about two

years on at least 10 occasions, the plaintiff, an employee at a supermarket, received gifts with love notes signed by an unknown person. *Id.* at 1087.  She later discovered that her supervisor and another employee sent the notes and gifts using a pseudonym. *Id.* at 1088.  The plaintiff testified that the same supervisor had followed her around the store, and had whistled at her in a taunting manner. *Id.*  The Tenth Circuit reversed the district court's denial of the employer's post-trial motion for judgment as a matter of law and held, "although Ms. Riske submitted evidence that she was subjected to a scheme of frightening notes and conduct, her evidence that this conduct was motivated by her sex falls short of actionable sexual harassment." *Id.* (citing *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1262 (10th Cir. 1998) (quoting *Hicks,* 833 F.2d at 1415)).  In *Riske*, the conduct occurred approximately 10 times over the course of two years, and this did not meet the pervasiveness standard for sexual harassment. Here, Plaintiff testified that Senkevich's conduct interfered with Plaintiff's work "on a continuous basis," over a four month period. (Chavez-Acosta Aff. ¶ 15ix.) Plaintiff's testimony paints a picture of a pervasively abusive environment.

In *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.,* 2012 WL 1190820 (D. Kan. 2012) (unreported decision), a male employee at a county mental health center alleged that his female co-worker sexually harassed him.  The court denied summary judgment to the employer based on evidence that the female co-worker was (1) calling and emailing the plaintiff several times a day; (2) visiting his office on several occasions; (3) buying him gifts; (4) stalking him at the office; (5) expressing her feelings for him; (6) parking her car next to his car; and (7) making complaints about his treatment of patients. *Id.* at * 9.  The Court noted that the conduct was motivated by the desire for an intimate relationship; and therefore, "established a genuine dispute of material fact as to whether [the] conduct was motivated by [the plaintiff's] sex." *Id.* (citing

8

*Dick v. Phone Directories Co., Inc.,* 397 F.3d 1256, 1264 (10th Cir. 2005)).  In this case,

Plaintiff presented evidence that Senkevich stalked her and photographed her. (Chavez-Acosta

Aff. ¶ 15.)  Moreover, Plaintiff testified that Senkevich's obsession with her was "demonic." (*Id.*

¶ 26.)

In *Roberts v. Air Capitol Plating, Inc.,* 1997 WL 446266 (D. Kan. July 22, 1997)

(unreported decision), the plaintiff presented evidence "that, beginning in 1989 or 1990, the

plaintiff's supervisor Wilson (1) told the plaintiff that he loved her or was in love with her on

numerous occasions; (2) met with her often to discuss his personal matters; (3) called her every

night on her cellular phone; (4) walked her to her car every night; (5) followed her around at

work; and (6) told her she was acting like a "fucking bitch" after she rebuffed his advances. *Id.* at

\* 12. The plaintiff testified that her supervisor's attention impacted her work, requiring her to try

to avoid him, and requiring her to work overtime to finish work interrupted by Wilson's time-

consuming personal conversations. *Id.* at \* 15.  The court denied the defendant's motion for

summary judgment on the plaintiff's sexual harassment hostile work environment claim. *Id.*

In *Bragg v. Office of the Dist. Atty., Thirteenth Judicial Dist.,* 704 F. Supp. 2d 1032 (D.

Colo. 2009), the plaintiff was employed in the victim's rights division of the district attorney's

office in Colorado's 13th judicial district. *Id.* at 1039.  One of the high ranking attorneys with

that office, Mr. Jones, engaged in several personal conversations with the plaintiff during his

wife's illness and after his wife's death.  *Id.* at 1040.  Mr. Jones initiated rumors that he and

plaintiff were in a sexual relationship. *Id.*  After the plaintiff's repeated refusals of Mr. Jones'

romantic proposals, Mr. Jones became increasingly uncooperative with the plaintiff and with the

victim's advocate office in general. *Id.*  Mr. Jones' refused to communicate with the victim's

advocates and eventually refused to work with the plaintiff. *Id.* at 1041.  Mr. Jones openly

9

criticized the plaintiff's work using sexually vulgar and demeaning language, which contributed to a tense atmosphere between the two divisions. *Id.* at 1042.   The court denied summary judgment and stated that the facts represented the "classic" case of sexual harassment: Mr. Jones harassed the plaintiff "because of her refusal to participate in a romantic relationship with him." *Id.* at 1058.   The district courts in *Roberts* and *Bragg* were faced with scenarios similar to this one: a supervisor who, to one degree or another, approaches an employee romantically, and after a refusal, treats the employee abusively and undermines the employee's ability to perform at work.

In this case, Plaintiff has presented evidence that Senkevich proposed a romantic relationship, which Plaintiff rebuffed.   In the ensuing four months, Senkevich spoke to Plaintiff abusively and on "several occasions" undermined, or sabotaged, Plaintiff's ability to perform her job. (Chavez-Acosta Aff. ¶ 15 iii.)   Plaintiff testified that Senkevich's "constant retaliatory and harassive (sic) behavior created unbearable stress and caused and continues to cause my sleep problems and caused my personality to change." (*Id.* ¶ 16.)   Plaintiff further testified that she "would cry in the parking lot because I did not want to go into work and see and be harassed by Chance Senkevich.  His obsession towards me was demonic.  However, I am a single parent and needed my job.  I would often confide and cry to my parents about the harassment at SWC."  (Id. ¶ 26.)   Plaintiff's evidence of pervasiveness is sufficient to create a material fact issue on her sexual harassment hostile work environment claim.   The evidence shows that instead of training Plaintiff to properly perform her job, Senkevich undermined Plaintiff's ability to learn her job by creating a critical and hostile atmosphere and by sabotaging equipment in Plaintiff's work area. As the Court remarked in its ruling on summary judgment, this case is close, but the evidence and the reasonable inferences therefrom, viewed in the light most favorable to Plaintiff, shows

that Plaintiff has created a material fact issue as to whether Senkevich's conduct created a

pervasively hostile work environment.

    IT IS ORDERED THAT DEFENDANT'S MOTION FOR RECONSIDERATION (Doc.

No. 60) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE